BEFORE THE SECOND DIVISION

OCTOBER 29, 1957

**No. 61316.**—Ronette Acoustical Corporation *v.* United States, protest 291344–K (New York).—

PER CURIAM: By the foregoing protest, a question has been raised by plaintiff as to the proper classification and assessment with duty of two items of merchandise covered by the entry accompanying said protest.   Said items are described on the commercial invoice as "RONETTE Naaldhouders zonder saffier" and "RONETTE Saffierhouders."   The former of said items was classified by the collector of customs as articles of metal, not specially provided for, in paragraph 397 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 397), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and assessed with duty at the rate of 22½ per centum ad valorem.   The latter item was classified as phonograph needles in paragraph 1542 of said act (19 U. S. C. § 1001, par. 1542), and duty was imposed thereon at the rate of 8 cents per thousand, plus 45 per centum ad valorem.

Plaintiff contends that the items in controversy should properly have been classified as parts of articles having as an essential feature an electrical element or device in paragraph 353 of said act (19 U. S. C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739, and subjected to duty at the rate of 13¾ per centum ad valorem.

For ready reference, the pertinent provisions above referred to are here set forth.

Paragraph 397 of said act, as modified, *supra*—

Articles or wares not specially provided for, whether partly or wholly manufactured:

\* \* \* \* \* \* \*

Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\* \* \* \* \* \* \*

Other (except slide fasteners and parts thereof)____ 22½% ad val.

Paragraph 1542 of said tariff act—

\* \* \* needles for phonographs, gramophones, graphophones, and similar articles, 8 cents per thousand and 45 per centum ad valorem.

Paragraph 353 of said act, as modified, *supra*—

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

\* \* \* \* \* \* \*

Other \* \* \*_____ 13¾% ad val.

When this case was called for hearing, plaintiff corporation was not represented by counsel. Ira Molay, vice president of the Ronette Acoustical Corporation, was sworn as a witness and testified on behalf of plaintiff.

During the course of the proceedings, the following exhibits were introduced and received in evidence:

On behalf of plaintiff—

Exhibit 1—Sample of the imported merchandise.

Exhibit 1–A—A drawing of exhibit 1.

Illustrative exhibit 2—A phonograph needle with a sharp point.

Illustrative exhibit 2–A—An enlarged drawing, illustrating exhibit 2.

Illustrative exhibit 3—A disassembled portion of a phonograph cartridge, together with a sketch thereof.

On behalf of defendant—

Exhibit A—A phonograph cartridge, with 2 sapphires set therein.

Witness Molay differentiated between exhibits 1 and 2 by stating that exhibit 2 is an elongated cylindrical piece of metal coming to a sharp point at one end, the point being designed to rest on a phonograph record, and constitues what he recognizes as a phonograph needle and which acts to transmit sound from the record to the "sending" element in the phonograph. Exhibit 1, which he referred to as "styli parts," is used in connection with a phonograph cartridge, illustrated by plaintiff's exhibit 3. The phonograph cartridges employ sapphire stones, which transmit sound from the record to the phonograph pickup. Articles like those in controversy are attached to exhibit 3 by little screws and metal clips. The cartridge, represented by exhibit 3, has attached thereto one styli with a sapphire and the other styli without a sapphire. The styli with the sapphire rests on the record and transmits the vibrations into the crystal device inside the styli, but the vibration is not transmitted through the styli itself, as represented by exhibit 1.

Molay explained that, due to the added expense where two sapphires are inserted in a phonograph cartridge, customers request that the sapphire be omitted from one of the styli. However, due to the construction of the cartridge, the styli cannot be eliminated because, when the cartridge is resting on the record, the pressure would force the crystal and sapphire into the housing, since there would be nothing

to keep it in position. It is, therefore, necessary in such cases to use a blank stylus (a stylus without a sapphire), which acts as a spring and centers the crystal element. If one were to take a styli blade off the cartridge and attempt to play a phonograph without it, the phonograph would not play, because the entire internal element would be displaced. No part of exhibit 1 comes into actual contact with a phonograph record.

On cross-examination, defendant's exhibit A was shown to the witness, and he stated that the phonograph cartridge has two sapphires set into it, one on either side of the cartridge, and that said cartridge can, therefore, be used on either side as a reproducing device. When asked whether exhibit A, when in use for the reproduction of sound, became a part of what is known as a record changer, the witness replied in the affirmative. He also stated that exhibit 1, when complete with a sapphire inserted therein, has no other use than in conjunction with a phonograph cartridge, such as exhibit A, and that it was designed specifically for such a cartridge.

There were no witnesses called to testify on behalf of the Government.

At the completion of the hearing, Government counsel addressed the court to the effect that his investigation would indicate that the case of *Garrard Sales Corp.* v. *United States*, 35 C. C. P. A. (Customs) 39, C. A. D. 369, may be completely decisive of the issue here presented.

In *Garrard Sales Corp., supra,* certain automatic record-changer units were the subject in controversy. The collector of customs had classified said articles as parts of phonographs in paragraph 1542 of the Tariff Act of 1930 and assessed appropriate duty thereon. It was the contention of plaintiff therein that said merchandise should properly have been classified as articles having as an essential feature an electrical element or device, such as electric motors, in paragraph 353 of said act, as modified, and dutiable accordingly. It appears from the decision in that case that the imported articles could be used either in a phonograph or in a phonograph-radio combination for the purpose of automatically changing a record after it had been played. It had been stipulated that each of the record changers, as well as the phonograph-radio combination, had an electric motor as an essential feature and integral part thereof and that the phonograph-radio combination could not function as such without the record-changer unit. The phonograph-radio combination with which the record-changer unit was to be used had a frequency amplifier and a loudspeaker, which were common to both the phonograph and the radio and necessary to the operation of each. The appellate court held that the phonograph and the radio, when combined in a single unit, constitute a separate and distinct article which is something more than either and that the automatic record-changer units were, therefore, not parts of phonographs, as classified by the collector, but, in view of the presence of electric motors, said articles were articles having as an essential feature an electrical element or device in paragraph 353, as claimed by plaintiff.

On the record in the present case, we are at a loss to understand the controlling effect of the *Garrard* case. There is nothing presently before the court to indicate what electrical element, if any, is present in the article with which the merchandise in issue is to be joined, which would bring it within the electrical article provisions of paragraph 353. It should not be left to inference that the styli parts in controversy, when completed and incorporated in a phonograph cartridge, are to form part of an electrically operated phonograph.

Moreover, there appears to be a discrepancy in the testimony of plaintiff's witness as to the actual purpose of the imported articles. It would appear from his direct testimony that the styli parts were parts of phonographs, whereas, on cross-examination, he stated that the imported articles, when attached to a phonograph cartridge, such as defendant's exhibit A, became a part of what is known as a record changer.

In view of the seemingly contradictory evidence, the fact that the plaintiff was not represented by counsel, and our inability, on the record as presented, to see the applicability of the *Garrard Sales Corp.* case to the facts in the present controversy, we believe that the ends of justice will best be served by restoring this case to the calendar for clarification of the record and for such other evidence as the parties may wish to present.

It is so ordered.